## STATE v. SNYDER, TREASURER
No. 1139

## FOX v. ARMSTRONG
No. 1142
(Decided February 15th, 1923; 212 Pac. 771)

Reserved Questions—Mandamus—Taxation—Classification of Property for Taxation—Tax Exemption—Constitutional Law—Statutes—Statutory Construction—General Laws—Special or Local Laws—Bonuses—Ejusdem Generis—State Donations—Counties—Public Corporations.

1. Section 2753 C. S. 1920 as amended by Chapter 50, Section 2, Laws 1921 exempting from taxation $2,000.00 of property of honorably discharged war veterans and their widows during widowhood and of nurses who served during the World War, is not in conflict with Article XVI, Section 6 of the State Constitution, prohibiting the state or any political subdivision thereof from loaning or giving its credit, or making donations, except for the necessary support of the poor.

2. Section 2753 C. S. 1920 as amended by Section 1 of Chapter 50, Laws 1921 exempting from taxation $2,000.00 of

the property of persons who have performed military or naval service, is not a bonus law, but a valid tax exemption statute, founded upon principles of public policy in the interest of the public welfare conferring upon a class in recognition of public service something in the nature of an immunity or privilege rather than a gift or donation.

3. Section 2753 C. S. 1920 as amended by Section 1 of Chapter 50, Laws 1921, exempting from taxation $2,000.00 of the property of persons who have performed military or naval service, is a general law and not in conflict with Article XV, Section 12, requiring tax exemptions to be made by a general law, nor is the Act in conflict with Article III, Section 27 of the Constitution, prohibiting the legislature from passing any local or special law for the collection of taxes, or laws for the relinquishment in whole or in part of the indebtedness, liability or obligation of any person to the state or any municipal corporation therein.

4. In the classification of property for taxation there must be a substantial distinction, having reference to the subject matter of the proposed legislation, between the objects or places embraced therein and the objects or places excluded therefrom.

5. Laws which do not embrace every class of objects or persons within the reach of statutory law are special laws, with the single exception, that the legislature may exclude from the provisions of a statute such classes of objects or persons as are not similarly situated with those included in respect to the nature of the legislation.

6. Laws are general when their subject matter is of common interest to the whole state and not local; when their provisions embrace the whole subject or a whole class of it.

7. Article I, Section 28 of the Constitution requiring all taxation to be equal and uniform, and Article XV, Section 11 requiring uniform assessments for taxation, do not prevent exemptions of property from taxation when lawfully made by the legislature by express authority of the Constitution,—said provisions requiring only, that property made subject to taxation be taxed equally and uniformly.

8. State governments possess all governmental power not denied to them by the Constitution, and in the absence of prohibition expressed or necessarily implied, they may make all reasonable measures for the promotion of the general welfare and the legislature of this state possesses

all legislative authority except as restricted by the State or Federal Constitutions, either expressly or by clear implication.

9. It was clearly intended by Article XV, Section 12 of the State Constitution not only to declare the property therein specifically enumerated, to be exempt from taxation, but to permit further exemptions to be made by the legislature in its discretion, reasonably exercised, without being limited to the same kind or class or property as that specifically described in the section.

10. The discretion of the legislature in exempting property from taxation is not arbitrary but there must underlie its exercise, some principle of public policy, supporting the presumption that the public interest shall be subserved by the exemption allowed.

11. Chapter 170, Section 34 b, Laws 1921, being for the appropriation from the state treasury to reimburse counties for the actual amount of the county tax on the property exempt under provisions of Section 2753 C. S. 1920, as amended by Section 1, Chapter 50, Laws 1921, is not in conflict with Article III, Section 36 of the State Constitution prohibiting appropriations for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state, or denominational or sectarian institutions or associations, a county not being a corporation within the meaning of said section.

12. Every county in the state, whether regarded as a corporation or a mere political subdivision, is under the absolute control of the state.

13. Money may be appropriated by the legislature whenever the public welfare requires, and will be promoted by it, and it is for the legislature to decide what is for the public good.

14. The fact that a claim against a municipal or public corporation is not such a one as the law recognizes as a legal obligation, forms no constitutional objection to the validity of a law directing its payment.

15. Section 2753 C. S. 1920 as amended by Section 1, Chapter 50, Laws 1921, being a valid exercise of legislative power is not affected by the fact that by the same or a similar statute the legislature has provided for the reimbursement of counties to the extent that they are deprived of revenues by the operation of such exemption.

Case No. 1139 is an original proceeding in mandamus on the relation of the county commissioners of Goshen County, Wyoming, as plaintiff against John M. Snyder as State Treasurer. A demurrer was filed to the petition.

Case No. 1142 was brought in the District Court of Goshen County, Wyoming, to enjoin the collection of a tax upon the property of the plaintiff W. T. Fox, an honorably discharged veteran of the World War, levied upon his property in said county assessed at a valuation of $250.00, it being alleged that plaintiff had no other property, real or personal, in the state. A demurrer was filed to the petition and on motion of the county treasurer the cause was ordered certified to the Supreme Court for its decision upon important and difficult constitutional questions, arising in said action. The two cases were heard at the same time and are disposed of in one opinion. The actions involved the validity of Section 2753 Wyoming Compiled Statutes 1920 as amended and re-enacted by Chapter 50, Section 1, Laws 1921, exempting from taxation the property of honorably discharged war veterans and their widows during widowhood, and of nurses who served during the World War. The Act further provides for reimbursement of each county by the state of the actual amount of the county tax on said property exemptions. The validity of an appropriation made by Chapter 170, Section 34 b, Laws 1921, for the purpose of making the reimbursements provided by the statute first mentioned, is also involved in the controversy.

*David J. Howell,* Attorney General, and *W. L. Walls,* Assistant Attorney General, for the demurrer in case No. 1139.

Defendant Snyder as State Treasurer has been substituted for A. D. Hoskins, former State Treasurer. The relator seeks by an original proceeding in mandamus to require defendant to reimburse Goshen County to the amount of the county tax revenues of which said county was deprived by the operation of Chapter 50, Laws 1921, being an amendment of Section 2753 C. S. 1920, exempting to the amount

of $2,000 the property of war veterans, their widows, during widowhood, and nurses who served during the World War. Defendant has demurred to an alternative writ issued on said petition. Defendant contends that the statute is unconstitutional and in conflict with Article 3, Section 36, Constitution, prohibiting state donations. (39 Pac. 1090.) The appropriation made at the same session of the legislature to reimburse counties on account of loss of revenue occasioned by said exemption statute is also involved for the same reason. The appropriation is benevolent in character. (1 Words & Phrases 754.) Counties are corporations within the meaning of the constitutional provisions referred to, 1300 C. S. 1920; neither the state nor any county, city, township, town, school district or other political subdivision, is permitted to loan or give its credit, or make donations to individuals, associations or corporations, except for the support of the poor. (Article XVI, Section 6.) This is not a donation for the support of the poor. A donation to the county is merely an indirect method of making the donation, since the exemption claimant is the beneficiary. Gifts or donations of public funds cannot be made by the legislature, (Pelty v. Colgan, 31 Pac. 1133,) construing the California Constitution almost identical in terms; in re Relief Bills, 39 Colo. 1090, involving the same question under a similar constitutional provision. Counties are not under the control of the state. The money is a gift to reimburse the county for possible losses it may sustain and is prohibited by the Constitution.

*E. H. Reid, J. M. Roushar, E. J. Plunkett, H. K. Huber, J. L. Sawyer, contra,* in case No. 1139.

The purpose of the Act is to discharge an obligation to men and women who have performed military service. This obligation has been recognized by most of the states in one way or another, Wyoming electing to meet it by certain tax exemptions. The effect of the statute is a payment by the state to the exempted men or women of an amount equal to their taxes for the then current year; it is not a gift.

Counties are used by the state merely as a pocket from which certain sums were taken and replaced by the state. It was intended that the burden should be separated in such a way as to be equalized irrespective of the number of service men who might reside in any particular county. The state under this law confers a privilege or immunity upon individuals for the performance of military service. The law is not within the prohibition contained in Article XVI, Section 6, or Article III, Section 27 of the State Constitution since the payment is not a donation, but a payment made for a public purpose. (State v. Johnson, 170 Wis. 218, 175 N. W. 589; Broadhead v. Milwaukee, 19 Wis. 624; State v. Handlin, 38 S. D. 555; Franklin v. Examiners, 23 Calif. 173; Leonard v. Wiseman, 31 Md. 201; Gustafson v. Rhinow, 175 N. W. 903; Opinion of Justices, 211 Mass. 608.) The question was thoroughly considered in the Washington case of State v. Clausen, 194 Pac. 793, 13 A. L. R. 580, holding the pivotal question to be whether the money was devoted to a public purpose. In this case the payment, while made to the county, was, in fact, made to the individual service men or women to whom exemption had been allowed, which is a public purpose and therefore, not within the prohibition of the Constitution.

*Harvey J. Cregan,* for defendant's demurrer in case No. 1142.

Plaintiff Fox, by petition in the District Court of Goshen County sought to enjoin the county treasurer from collecting a tax on his property which he claimed to be exempt under Section 2753 C. S. 1920, as amended by Chapter 50, Laws 1921. Defendant demurred; the cause is here on reserved constitutional questions.

1. The Act is in conflict with Article XVI, Section 6, prohibiting the state or any subdivision thereof from loaning, giving credit or making donations in aid of indivduals, associations or corporations. (People v. Westchester Nat. Bank, 231 N. Y. 465, 15 A. L. R. 1344; Beach v. Bradstreet,

85 Conn. 344, 62 Atl. 1030; Mead v. Akton, 139 Mass. 341, 1 N. E. 413; Opinion of Justices, 186 Mass. 603, 72 N. E. 95; Opinion of Justices, 190 Mass. 611, 77 N. E. 820; Bush v. Orange Co., 159 N. Y. 212, 53 N. E. 1121; Washington Co. v. Birwick, 56 Pa. 466.)

2.   The Act is also in conflict with Article XV, Section 12 of the Constitution, in that it is not a general law with reference to exemptions as required by said Section.   (37 Cyc. 887; State v. Daniel, 49 Pac. 243.)

3.   The Act violates the provisions of Article III, Section 27, prohibiting the enactment of local or special laws for the collection of taxes.   (State v. Garbroski, 111 Ia. 496; City v. Anderson, 75 S. C. 62; State v. Sherman, 18 Wyo. 176.)

4.   The Act violates the provisions of Article III, Section 27, prohibiting the legislature from relinquishing indebtedness, liabilities or obligations of any person or municipal corporation.

5.   The Act is also in violation of Article III, Section 27, prohibiting the legislature from passing local or special laws exempting property from taxation.   (Adams v. Oil Co., 53 So. 692; Cooley on Taxation, Vol. 1, p. 381; Cooley on Const. Lim. 7th Ed. p. 555; Millett v. People, 117 Ill. 294; People v. Township, 20 Mich. 452.)

It is true that the decisions are not in harmony as to whether a bonus granted for military service is a donation or a gift within the provisions of Section 5, Art. XVI.   (See note, 7 A. L. R., 1644.)   The Act was either a loan or a gift. (People v. Bank, 231 N. Y. 465.)   There can be no distinction between paying a grant or making a gift from public funds in the treasury and donating a tax or tax liability due or to become due.   (Bush v. County, 159 N. Y. 213.) The Wyoming Constitution clearly prohibits donations of this class.   Tax exemptions must be made by a general law. (State v. Daniel, 49 Pac. 243.)   The words ''such other property etc.'' appearing in Article XV, Section 12, refer to property of the same general kind.   The doctrine of

*ejusdem generis* applies. The law is a special or local law since it selects war veterans, nurses and widows of soldiers as beneficiaries of the exemption. (State v. Garbroski, 111 Ia. 496.) It is respectfully submitted that the provisions of the Act in question are in violation of the Constitution and the reserved questions should be answered to that effect.

*E. J. Plunkett, H. D. LaSalle, H. K. Huber, Roushar & Dwinnell* and *Vincent Carter, contra,* in case No. 1142.

In the attack upon the statute numerous sections of the Constitution are invoked in the apparent hope that one or the other will suffice; this implies a reasonable doubt whether it was within any of the prohibitions of the Constitution referred to. If the case be free from any reasonable doubt, the law must be sustained. Every presumption is in favor of the validity of the statute. (Swan v. U. S., 3 Wyo. 151; Post v. U. S., 3 Wyo. 159; Slaymaker v. Phillips, 5 Wyo. 453; Barkwell v. Chatterton, 4 Wyo. 307; Investment Co. v. Carpenter, 9 Wyo. 110; Bridge Co. v. Union Ferry Co., 29 Conn. 210; Kellogg v. Treasurer, 44 Vt. 356; Osborn v. Staley, 5 W. Va. 85.) The statute will be sustained if it be possible to do so by a reasonable construction of its terms. (11 Wyo. 128; 18 Wyo. 362; 25 Wyo. 367; Grenada Co. v. Brogden, 112 U. S. 261; Roosevelt v. Goddard, 52 Barb. 533.) The question of policy is for the legislature; its powers are supreme, except where restricted by constitutional limitations. (Helman v. Shoulters, 114 Cal. 136; State v. Corbet, 57 Minn. 345; State v. Hildenbrand, 62 Neb. 136; Purnell v. Mann, 105 Ky. 87; Lepper v. State, 103 Tenn. 500; State v. Sharpless, 31 Wash. 191; Viemeister v. Wright, 88 App. Div. 44.) The exemption of property from taxation is a legislative function. (Article XV, Section 12.) The Act is general in its terms. (Brooks v. Hyde, 33 Calif. 366; Bank v. Duttonheine, 107 Ga. 606; N. P. R. R. v. Barns, 2 N. D. 310.) A law is general and uniform if all persons in the same circumstances are treated

alike.  (Davis Co. v. Polland, 158 Ind. 607.)    The doctrine
of *ejusdem generis* does not apply to property referred to
in Article XV, Section 12 of the Constitution.    Its provi-
sions differ from the Washington Constitution construed in
Chamberlain v. Daniels, 17 Wash. 111.    Moreover, our
constitutional provision refers to different classes of prop-
erty.  (Chegary v. Mayor, 13 N. Y. 220; Bank v. Ripley,
161 Mo. 126; Misch v. Russell, 136 Ill. 22.)    ''Such other
property'' means any other property.  (Sutherland Stat.
Cons., 472.)    The following are classes of property made
exempt by former legislation:   Beet sugar factories, 1897;
property of Civil War veterans, 1917; polls of persons over
fifty years of age, 1869; household goods and wearing ap-
parel, 1869.    None of which refer to a *genus* or class in con-
struing constitutional provisions; all must be construed to-
gether.  (12 C. J. 707-709.)    In the present case the ex-
emption is made for a public purpose and is valid.  (State
v. Johnson, 170 Wis. 218; Gustafson v. Rhinow, 144 Minn.
415; State v. Handlin, 38 S. D. 550; State v. Clausen, 194
Pac. 793.)    The rule of *ejusdem generis* is resorted to only
as an aid in arriving at the intent of the lawmakers.  (Naphi
Co. v. County, 93 Pac. 53.)    Section 2753 C. S. 1920 was
originally enacted in 1895, exempting the property of Civil
War veterans from taxation and has been sanctioned by long
custom and usage.  (New York v. Bank, 231 N. Y. 465.)
The statute is not invalid as an act to give credit or make
donations such as are prohibited by Article XVI, Section 6.
(Broadhead v. Milwaukee, 19 Wis. 624; State v. Handlin,
supra; State v. Clausen, supra.)    The authorities cited by
counsel for defendant in support of their contention that
the Act is in violation of Article III, Section 27, are not in
point when considered in connection with the facts in the
present case.

POTTER, Chief Justice.

These two cases each involve a consideration of an Act
of the Legislature approved February 15, 1921, known as
Chapter 50 of the published Session Laws of that year; the

constitutionality of said Act being assailed in each case, though on different grounds. The two cases were heard at the same time and may be disposed of in one opinion, but, for reasons which will presently appear, it will be necessary to consider them as to some points separately.

The statute in question exempts from taxation property, to the amount of $2000, of all honorably discharged veterans of the Civil War, the Spanish-American War, and the World War, and their widows during their widowhood, and all nurses who served during the World War, who are bona fide residents of this state, and also provides in the same section for the reimbursement of each county by the state of the actual amount of the county tax on said property exempted. The section of the statute here involved reads as follows:

"Section 1. That the fourth and fifth paragraphs of Section 2753 of Chapter 71, Wyoming Compiled Statutes, 1920, be amended and re-enacted to read as follows: and that a new paragraph be added to be known as paragraph Sixth, to-wit:

Fourth.—The polls of all persons who have arrived at the age of fifty years, and the polls, excepting school polls, of all honorably discharged veterans of the Civil War, the Spanish American War and the World War.

Fifth.—The property of all honorably discharged veterans of the Civil War, the Spanish American War and the World War and their widows during their widowhood, and all nurses who served during the World War to the amount of Two Thousand ($2,000.00) Dollars in assessed valuation; Provided that no person shall be entitled to the exemption provided for in this section except he or she be a bona fide resident of the State of Wyoming.

Sixth.—It shall be the duty of the several county treasurers throughout the State of Wyoming to submit to the State Treasurer, on or before the first day of March in each year, a certified statement of the exemptions allowed by said counties under the provisions of this act, and on or before

the first day of May, following, said State Treasurer shall reimburse each of such counties to the actual amount of the county tax on such property exempted, less poll taxes so exempted by such counties.''

The section of the Compiled Statutes thus amended provided and continues to provide for the exemption from taxation of property therein described. The first, second and third paragraphs of the section immediately following the statement that ''the following described property is hereby exempted from taxation'' mentions the property of this state and of the United States, the property of any county, township, incorporated cities, towns and school districts; public libraries, lots with the buildings thereon used exclusively for religious worship; church parsonages; public grounds by whomsoever donated to the public, including all places for the burial of the dead; fire engines and implements for extinguishing fires, with the ground used exclusively for the buildings of a fire company, and household furniture, wearing apparel and food for each family not exceeding in all the value of one hundred dollars. The fourth paragraph exempted the polls of all persons who have arrived at the age of fifty years; and the fifth, ''the property of all honorably discharged veterans of the Civil War to the amount of two thousand dollars in assessed valuation.'' To this is added by the statute here involved the property to the amount of $2000 assessed valuation, of honorably discharged veterans of the Spanish-American War and the World War, and nurses who served during the World War, and the restriction that to entitle any such person to the exemption he or she must be a bonà fide resident of this state.

The case of Fox v. The County Treasurer was brought in the District Court sitting within and for Goshen County, and is in this court upon reserved constitutional questions. The other case was brought by Frank Cloos, as County Treasurer of Goshen County against the State Treasurer, the board of county commissioners of said county being aft-

erwards substituted as plaintiff instead of the County Treasurer, as an original proceeding in this court wherein the relator applies for a writ of mandamus requiring the State Treasurer to reimburse Goshen County to the actual amount of the county tax on the property exempted by said statute, which was exempted and allowed by said Goshen County during the year 1921. An alternative writ was allowed and issued upon the filing of the petition and the cause has been heard upon a demurrer of the defendant, the State Treasurer, to the application for the writ; said application, when the cause was heard, being an amended petition in the cause. The Fox case, which is here, as above stated, upon reserved constitutional questions, will be first considered, since the questions relate only to the validity of the exemption provisions of the statute, while in the mandamus case against the State Treasurer the only part of the statute contended to be unconstitutional is that part providing for reimbursement to the counties of the amount of the county tax on the exempted property.

The Fox case was an action brought to restrain and enjoin the county treasurer from collecting a tax upon the property of the plaintiff, "an honorably discharged veteran of the World War," levied upon his property in said county assessed in the sum of $250.00; it being alleged that the plaintiff has no other property, real or personal, within this state. The petition in that case was demurred to and thereupon, upon motion of the county treasurer the cause was ordered to be certified to this court for its decision upon "important and difficult constitutional questions" arising in said action, which were stated in the District Court's order as follows:

"1.  Are the provisions of Section 2753 Wyoming Compiled Statutes 1920, as amended by Section 1 of Chapter 50 of the Session Laws of Wyoming for 1921 exempting from taxation the property of all honorably discharged veterans of the Civil War, Spanish-American War and the World War and their widows, during their widowhood, and all

nurses who served during the World War to the amount
of Two Thousand ($2000.00) Dollars in assessed valuation,
unconstitutional in so far as plaintiff herein is concerned,
as being in conflict with Section 6 of Article 16 of the Con-
stitution of the State of Wyoming providing that neither
the state nor any county, city, township, town, school dis-
trict or any other political subdivision shall loan or give its
credit or make donations to or in aid of any individual, as-
sociation or corporation except for necessary support of the
poor?

2.   Are the provisions of this law unconstitutional be-
cause not granted by general law with reference to exemp-
tions as required by Section 12 of Article 15 of the Consti-
tution of the State of Wyoming?

3.   Are the provisions of this law unconstitutional as be-
ing in violation of the provisions of Section 27 of Article
3 of the Constitution of the State of Wyoming prohibiting
the legislature from passing any local or special laws for
the collection of taxes?

4.   Are the provisions of this law unconstitutional as be-
ing in violation of the provisions of Section 27 of Article
3 of the Constitution of the State of Wyoming prohibiting
the legislature from relinquishing in whole or in part the
indebtedness, liability or obligations of any person of (to)
the state, or (to) any municipal corporation therein?

5.   Are the provisions of this law unconstitutional as be-
ing in violation of the provisions of Section 27 of Article 3
of the Constitution of the State of Wyoming prohibiting
the legislature from passing local or special laws exempting
property from taxation?"

The second, third, fourth and fifth questions will be first
considered, and may be considered together, since each of
those questions inquires whether the exemption provisions
of the statute violate certain stated provisions of Section
27, of Article III of the Constitution, which declares that
the legislature shall not pass local or special laws in certain
enumerated cases, and that in all other cases where a gen-

eral law can be made applicable, no special law shall be en-
acted.   And in this connection it seems proper to explain
that the 4th question contains an incorrect statement of the
provisions of the Constitution to which it refers.   It refers,
like the 2nd, 3rd and 5th questions, to the provisions of Sec-
tion 27 of. Article III of the Constitution, but, instead of
stating that said section prohibits the legislature from pass-
ing a local or special law "relinquishing or extinguishing,
in whole or in part, the indebtedness, liabilities or obliga-
tion, of any corporation or person to this state, or to any
municipal corporation therein," the reserved question re-
fers to that section as directly prohibiting the relinquish-
ment of such "indebtedness, liability or obligation."   That
question, like the 2nd, 3rd and 5th, must, therefore, be con-
sidered as an inquiry concerning the validity of the statute
as affected by the constitutional provisions against the pass-
age of local or special laws.   However, the statute in ques-
tion does not provide for relinquishing any indebtedness,
liability or obligation to the state or any municipal cor-
poration.   The taxes to which it refers in providing for the
exemptions had not then been levied, for the statute applied,
of course, to future taxes, there being nothing to indicate
the contrary.

Each of those questions must be answered in the negative.
For, in our opinion, the statute is a general law.   This court
has had occasion to consider the distinction between a gen-
eral and special or local law in several of our decided and
reported cases.   In Standard Cattle Co. v. Baird, 8 Wyo.
144, a statute was under consideration which provided that
"all live stock upon the open range shall, for the purpose
of taxation, have their situs and be returned, listed, assessed
and taxed in the county wherein is located the home range
of such live-stock;" and it was contended that the statute
attempted arbitrarily to create two classes of live stock for
purposes of taxation, not based upon any reasonable ground
or necessity.   The court, in disposing of the question and
holding the statute to be a general law, accepted as correct

the following statement of the law upon the subject in one of the cases cited:

"The characteristics which serve as a basis for classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction having reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation, and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation."

And the court accepted also the statement of the law on the subject in another cited case, to the effect that every law is special which does not embrace every class of objects or persons within the reach of statutory law, "with a single exception, that the legislature may exclude from the provisions of a statute such classes of objects or persons as are not similarly situated with those included therein, in respect to the nature of the legislation." Again, in Reals, County Treasurer, v. Smith, 8 Wyo. 159, this court held that the statute therein under consideration was not a local or special law, and quoted from Sutherland on Statutory Construction as follows:

"It is said that laws are "general because their subject matter is of common interest to the whole state, and not local; because the provisions embrace the whole subject or a whole class of it. Not being confined to a part they are not partial or special. The state contains a great variety of subjects of legislation, each requiring provisions peculiar to itself. Generic subjects may be divided and subdivided into as many classes as require this peculiar legislation. Thus laws relating to the people, for certain purposes, extend to all alike, as for protection of person and property; for other purposes they are divided into classes, as voters, sane and insane persons, minors, husbands and wives, parents and children, etc. Property is subject to division into

classes. Nearly every matter of public concern is divisible, and division is necessary to methodical legislation. A statute relating to persons or things as a class is a general law.''

In McGarvey v. Swan, 17 Wyo. 120, at page 138, this court said:

''That a reasonable classification of objects of legislation or localities may be resorted to without rendering an act objectionable as a local or special law, within the meaning of the constitutional inhibition of such laws, is a general principle too well settled to admit of present controversy.'' And the court quoted with approval the following from a cited text-book: ''A law is not local or special or lacking in uniform operation merely because it does not include in the scope of its operation every locality or person in the state. * * * The classification of localities and persons, for various legislative purposes, is not prohibited, so long as such classification has that basis of reasonableness which distinguishes classification from arbitrary discrimination.''

And in State v. Sherman, 18 Wyo. 169, the court stated that in order to justify holding a statute void because of unreasonable classification ''the court must be able to say, upon a critical examination of the statute in the light of the object sought to be accomplished, or the evil to be suppressed, that the legislature could not reasonably have concluded that distinctions existed relating to the purpose and policy of the legislation.'' (See also 25 R. C. L. 813, 817.)

From the viewpoint of the principles thus established and the object of the particular legislation, we perceive no reasonable ground for holding the statute in question to be either local or special, and therefore hold that the statute is a general law, and not, in the respect mentioned in either of the reserved questions aforesaid, violative of Section 27 of Article III of the Constitution. (Elting v. Hickman, 172 Mo. 237; Citizens Telephone Co. v. Fuller, 229 U. S. 322; Mich. Telephone Tax cases, 185 Fed. 634.)

By the first reserved question we are asked to decide whether the exemption provisions of the statute are in conflict with Section 6 of Article XVI of our State Constitution. That part of the section to which the question refers reads as follows:

"Neither the state nor any county, city, township, town, school district or any other political subdivision shall loan or give its credit or make donations to or in aid of any individual, association or corporation, except for necessary support of the poor."

It is contended on behalf of the County Treasurer that the exemptions, when allowed, amount to a donation to each individual whose property is declared by the statute to be exempt from taxation, and the statute is treated in the argument as though it were a bonus law or an act providing, though indirectly, for the payment of a bonus to the veterans of the wars named. It was also argued by counsel for the relator in the mandamus case against the State Treasurer, that the act may be considered as a bonus law, and that as such it is a valid exercise of the legislative power. Such argument was made in that case, no doubt, because of the possible effect of the contention of the county attorney in the Fox case upon the mandamus case, although in the latter case, the Attorney General does not assail the validity of the exemption provisions of the statute. And one of the counsel for relator, so contending, seemed to concede in oral argument that as a mere tax exemption statute the Act would be invalid under the provisions of Section 12 of Article XV of the Constitution providing for tax exemptions.

We are clearly of the opinion, however, that the statute is not a bonus law, either in form or in fact, and that it was not intended and is not to be considered as such. The property exemptions provided for were inserted as an amendment to the 5th paragraph of a section of the Compiled Statutes which provided only for exempting property, to the amount stated in the statute, of veterans of the Civil War. Very clearly, the original provision of that paragraph was

not intended as a bonus or bounty to the veterans of the Civil War. That provision was first added to the section in 1895, thirty years after the close of the Civil War, and when that war occurred, Wyoming had not been created or organized as a separate governmental entity, and it had not been concerned either as a state or territory or as a separate governmental subdivision in supplying soldiers for that war. Nor is the statute in question here, which extends the exemption to honorably discharged veterans of the Spanish-American War and the World War, and the nurses who served in the World War, confined to veterans or nurses who enlisted or were inducted into the service in either of those wars from or as residents of this state, but the statute applies indiscriminately to all veterans and nurses who served in those wars; so that a situation usually present where bonus or bounty laws for the benefit of soldiers have been sustained is not presented by this statute. Again, only those who are residents of and have property within the state are benefited by the statute. A soldier or nurse, although a resident of the state at the time of his or her service, and continues to be a resident, who is without property, receives nothing under the statute. The statute does not expressly require that the service shall have been in or with the military or naval forces of the United States, which provision, we think, would have been made in any statute intended as a bonus law. We entertain no doubt, however, that as a tax exemption statute it is to be construed as applying and intended to apply only to veterans and nurses who were in the service of the United States; and we so construe the statute for the reason that it should be upheld if reasonably possible under a fundamental rule controlling a decision upon the constitutionality of a legislative enactment, and it might be difficult to discover a public purpose behind a statutory provision exempting from taxation the property of a veteran of the Spanish-American or World War who did not serve in or with any of the armed forces of the United States.

But the validity of the statute does not necessarily depend upon a decision respecting its character as a bonus law. It must, we think, either fall or be sustained upon a consideration of its character as a tax exemption statute, though under that view of the statute it is proper to consider the nature of the service of the persons intended to be benefited by it and the reasons which we may assume influenced the legislature in enacting it, to ascertain whether it may in any reasonable or substantial way promote the public welfare or be found to serve and to have been intended to serve a public purpose. There can be no question, we think, that it does serve a public purpose. (State v. Handlin, 38 S. D. 550, 162 N. W. 379; State v. Clausen (Wash.) 194 Pac. 793.) In People v. Westchester Co. Natl. Bank, 231 N. Y. 465, a bonus law was declared invalid, on the ground that it provided for a gift or loan of the state's credit (the statute having provided for the issuance of bonds to carry out the purpose.) But it was declared in the decision that the statute was one promoting the public welfare and was not objectionable on the theory that it appropriated the public money for other than a public purpose. It is said in the opinion:

"The payment of a pension or a bonus for past services showing the gratitude of the people, showing that the state is mindful of those who have made sacrifices for it, is an incitement to patriotism and an encouragement to defend the country in future conflicts. Even if such a payment is not clearly one made in the general interest, at least there is such ground for the claim that where the legislature has accepted that view, the courts may not interfere. That they believe the action unwise or unnecessary is immaterial. As to that question the legislature is the final arbiter. (citing cases.) What long custom and usage has sanctioned, what the weight of judicial authority has approved, that we should be slow to declare wrongful."

It is said in Cooley on Taxation that the primary object of bounty land grants or donations is not private but public

interest. "To show gratitude for meritorious public services in the army and navy by liberal provisions for those who have performed them is not only proper in itself, but it may reasonably be expected to have a powerful influence in inciting others to self-denying, faithful and courageous services in the future, when the government, which is so ready to be generous as well as just, shall have need of their assistance. The same may be said of a like recognition of valuable public services rendered by other persons: the question in every case is not one of power, but of prudence and public policy." (Cooley on Taxation, 2nd Ed., page 111.) And it is further said in the same work, at page 136:

"The general government having authority to declare war and conduct warlike operations, no question can exist of its right to levy taxes in order to pay bounties for military services performed or promised. The several states may with as little question do the same."

We have no hesitation, therefore, in declaring that the statute may be properly assumed by the court as having been intended to promote the public welfare, and that it must be regarded as having that effect and as a statute for the accomplishment of a public purpose. That being its purpose and effect, it cannot be held, we think, to amount to a violation of the provisions of Section 6 of Article XVI above quoted. A lawful exemption from taxation cannot, we think, be regarded as a gift or donation to or in aid of the individual, association or corporation in whose favor the exemption is declared. Nor do we find any case holding such an exemption to be violative of such a constitutional provision. It may be assumed that a statute retroactively exempting property upon which a tax had been lawfully assessed, or had become due and payable, would be void to that extent. (In re Stanford's Estate, 126 Cal. 112, 58 Pac. 462.) But the statute in question is not to be regarded as intended to act or as acting retroactively. It was clearly intended to apply only to future taxes; and therefore it did

not in any sense relinquish any obligation to the state or any political subdivision thereof.

It is argued, however, in this connection that under the provision of the Constitution relating to tax exemptions (Article XV, Section 12) the legislature is not authorized to exempt any property except property of the same kind and character as that described as exempt in the said section. That section reads as follows:

"The property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, public cemeteries, shall be exempt from taxation, and such other property as the legislature may by general law provide."

A decision in Washington, State v. Daniel, reported in 49 Pac. 243, is cited in support of that contention, and counsel also refers to the provision of Section 11 of the same article providing that all property, except as in this constitution otherwise provided, shall be uniformly assessed for taxation. But our only jurisdiction in the Fox case is to decide and return an answer to the reserved questions, and neither of the reserved questions inquires as to the validity of the statute under Sections 11 and 12 of Article XV or as to the effect of those provisions of the Constitution upon the statute. The contention, therefore, that Section 12 of said article does not authorize the enactment, and that the statute violates the constitutional provisions as to uniformity of assessment and taxation, is not relevant to any question submitted in the case for our decision, unless it may be regarded as important to consider in determining whether or not the statute is void as authorizing a gift of public money. But it may be seriously doubted, we think, whether the provision declaring the exemptions can be considered as in any sense a provision for donations to the individuals whose property may become exempt. No money or property is donated or granted. The exemption is an immunity or privilege, rather than a gift or donation. No tax is to be assess-

ed or levied upon the exempted property, and therefore, to the extent of the exemption, no obligation is to be assumed by or imposed upon the owner.

It may be immaterial, however, for the purpose of this opinion, whether the contention thus made shall be considered in disposing of the Fox case or the case against the State Treasurer. For although the attorney general in the last mentioned case does not challenge the validity of the exemption provisions of the statute, it seems proper for the court in the consideration of that case to determine whether the act is a proper exercise of the legislative power under the provisions of Section 12 of Article XV, and in view of the provisions of the constitution relating to equality and uniformity of taxation. And, if the contentions ought to be considered in connection with a decision upon the first reserved question in the Fox case, what we shall have to say upon the subject may be considered as applying to both cases.

The constitutional provisions considered in the Washington case of State v. Daniel, supra, were materially different from the provisions of our constitution on the same subject. In the first place it was declared by the Washington constitution that the legislature shall provide a "uniform and equal rate of assessment and taxation on all property in the state," and that was followed by a proviso that the property of the United States, the state, counties, school districts, and other municipal corporations "and such other property as the legislature may by general laws provide, shall be exempt from taxation." It was provided in another section that all property in the state not exempt under the laws of the United States, "or under this Constitution," shall be taxed in proportion to its value. The two sections were necessarily construed together. It was said in the opinion respecting the rule of *ejusdem generis,* which was urged and applied in disposing of the question as to the construction of the exemption provisions of the Constitution, that the argument suggesting that "such other property" must have

been intended to refer to property outside and independent of the class of property enumerated would appeal very strongly to a student of technical logic, but that it was doubtful if the members of the constitutional convention indulged in so fine a discrimination in the use of words and phrases and were governed by such refined distinctions. And some of the other rules of interpretation stated in the court's opinion as controlling upon the question then before the court would not, in our opinion, be applicable in considering the provisions found in our state Constitution.

The provision authorizing the legislature to exempt other property was found in a proviso in the Washington Constitution. Not so in our Constitution. It was stated further in that case that if the proviso mentioned were to be construed alone, there is little doubt that it would bear out the construction contended for by appellant. But it was considered in connection with the provision requiring a "uniform and equal rate of taxation on all property in the state," subject only to the declarations contained in the proviso mentioned, and another proviso allowing a deduction of debts from credits.

Uniformity of assessment is required by our Constitution in one place in these words: "All property, *except as in this Constitution otherwise provided,* shall be uniformly assessed for taxation." (Sec. 11, Art. XV.) The exemption provisions are then found in the next succeeding section of the same article. There is also in Section 28 of Article I, the article known as the "Declaration of Rights," a provision that "all taxation shall be equal and uniform." But that must be considered in connection with the provisions of Article 15 relating specifically to the subject of taxation and revenue. Since Section 12 of that article enumerates certain public and private property as exempt, it is clear that the tax equality and uniformity required by Section 28 of Article I would not interfere with such exemptions; and it cannot be held to prevent exemptions when lawfully made by the legislature by express authority of the Consti-

tution.   But it should be held, in such case, to require only
that property made subject to taxation shall be taxed
equally and uniformly.   (37 Cyc. 738, 739; 12 Ency. L. 2nd
Ed. 274, 275.)

The general rule on the subject of exemptions from tax-
ation is said in Cooley on Taxation to have been too often
declared to be open to question, viz: that "the right to make
exemptions is involved in the right to select the subjects of
taxation and apportion the public burdens among them, and
must consequently be understood to exist in the lawmaking
power, wherever it has not in terms been taken away."
(Cooley on Taxation, 2nd Ed. 200; In Re Assessment of
First N. Bank, 58 Okl. 508, 160 Pac. 469.)

In view of the different provisions in our Constitution
from those construed in the Washington case, we cannot
accept the rule of *ejusdem generis* applied in that case as
controlling in the construction of the section of our Consti-
tution declaring to be exempt "such other property as the
legislature may by general law provide."   The decisive
principle is that expressed in a Kansas case, construing the
tax exemption provisions of the Constitution of that state,
which declared that certain specified property shall be ex-
empt, without recognizing the power of the legislature to
extend the exemption to other property.   It had been pre-
viously held in that state that the Constitution prescribed
only a minimum exemption which might be enlarged in the
wisdom and discretion of the legislature, and after holding
that such interpretation accorded with the common under-
standing at the time the Constitution was new, the court
said in the case we refer to that "it accords with a canon
of interpretation more fundamental than that of *'Expressio
unius est exclusio alterius.'*   *   *   *   The state govern-
ments possess all governmental power not denied to them
by the Constitution, and, in the absence of a prohibition,
expressed or necessarily implied, they may take all reason-
able measures for the promotion of the general welfare."
(Wheeler v. Weightman, 96 Kans. 50, 149 Pac. 977.)   The

legislature of this state possesses all legislative authority except as restricted by the state or Federal Constitution, either expressly or by clear implication. (Achenbach v. Kincaid, 25 Idaho 768, 140 Pac. 529; Williams v. Evans, 139 Minn. 32, 165 N. W. 495.) We are of the opinion that it was clearly intended by Section 12 of Article XV not only to declare the property therein specifically enumerated to be exempt but to permit further exemptions to be made by the legislature in its discretion reasonably exercised, without being limited to the same kind or class of property as that specifically described in the section, and that said section must be construed as so providing. But if there might be a doubt about the construction of the section in that particular, it appears clearly from the debates of the constitutional convention that it was understood by the members thereof, or at least by some of them, stated openly and without the expression of any contrary view by other members, that the section left the legislature with full authority to exempt such property from time to time as it might see fit. That understanding was expressly stated by the member who made the motion to insert the provision allowing other property to be exempted by the legislature, a lawyer by profession, and one of the leaders in the work of the convention. And the same understanding was stated also by another member, when voting upon a motion to insert the words exempting certain church property, questioning the necessity for the particular mention of such property in view of the general authority given, by a previous amendment, to the legislature. But such objections were answered by the member making the motion to insert church property that the motion was made for the purpose of putting it beyond the power of the legislature to tax such property.

A number of exemptions had previously been provided for by territorial laws, which were not included in the specific description of exempt property in Section 12, some of which have continued to remain in the statute and others

remained therein for a long period without question. (Revised Statutes 1887, §§ 3771, 3773.) Among the property thus exempted and which still continue to be specified as exempt without, so far as we know, any challenge as to the validity thereof, are: Fire engines, and all implements used for extinguishing fires, with the grounds used exclusively for the buildings of a fire company or companies; household and kitchen furniture, beds and bedding, and wearing apparel of every person and the food provided for each family, not to exceed in all the value of $100. (Comp. Stat. 1920, § 2753.) It was also provided at that time (Revised Statutes 1887, § 3771) that certain property of literary and scientific institutions, and the grounds and buildings of benevolent societies devoted solely to the appropriate objects of the institution, not leased or used for the pecuniary profit of individual members, with certain other restrictions unnecessary to mention, should be exempt, which was omitted from the statute by an amendment in 1895. But in 1901 a provision of like character was enacted (Laws 1901, Ch. 5) which has remained a part of our statutes (C. S. 1920, § 2754) exempting from taxation lands, with the buildings thereon used for schools, orphan asylums or hospitals, and for lodge rooms for the meetings of all secret, benevolent and charitable societies and associations, so long as said lands and buildings are not used for private profit. And since 1905, bonds of this state, or of any county, school district or municipality of this state have been declared exempt from taxation when owned by actual residents of the state; also, since 1911, all mortgages upon property within this state, together with the indebtedness thereby secured, provided, that the mortgaged property shall be taxed at its true value in money. (Laws 1905, Ch. 17; Laws 1911, Ch. 72; Comp. Stat. 1920, §§ 2755, 2756.) And the statutes have from time to time contained other exemptions unnecessary now to mention, though they would be interesting for the purpose of showing, together with the above, a continued legislative construction of the constitu-

tional provisions aforesaid, apparently concurred in by the people.

We hold, therefore, that the exemption provisions of the statute in question do not violate Section 12 of Article XV of the Constitution, or the provisions of that instrument relating to equality and uniformity of taxation. The discretion of the legislature in exempting property from taxation is not arbitrary, but, as stated in Cooley on Taxation (2nd Ed., p. 201) "There must underlie its exercise some principle of public policy which will support a presumption that the public interest will be subserved by the exemptions which are allowed." We have above explained our reasons for holding that the statute is not violative of that principle.

Each of the reserved questions in the case of Fox against the County Treasurer will be answered in the negative, that is to say, that the provisions of the statute mentioned are not unconstitutional for the reason stated in either of the questions.

In the other case (No. 1139) the attorney general attacks as unconstitutional that part of the act found in the 6th paragraph of the amended section, providing for a reimbursement by the state to each of the counties of the actual amount of the county tax on the property exempted under the exemption provisions above considered, less poll taxes so exempted. At the same session of the legislature at which the said act was passed the legislature appropriated for that purpose out of the general fund in the state treasury the sum of $150,000, which the published act recites was reduced by the Governor to $75,000. (Laws 1921, Ch. 170, Sec. 34b, p. 286.)

It is contended by the attorney general that the provisions for such reimbursement of the counties out of the state treasury is void on the ground that it violates Section 36 of Article III of the Constitution of this state, which provides:

"No appropriations shall be made for a charitable, industrial, educational or benevolent purpose to any person, corporation or community not under the absolute control of the

state, nor to any denominational or sectarian institution
or association.''

It is argued in support of that contention that the provi-
sion for reimbursement, together with the appropriation,
constitutes an appropriation for a benevolent purpose, and
that the county is ''a corporation, not under the absolute
control of the state.'' It is further argued, however, that
if the appropriation is not for a benevolent purpose, then it
must be considered as a gift by the state without any con-
sideration from the county, in which event it would be void
under the provisions of Section 6, Article XVI, referred to
in the first question in the Fox case.

There can be no doubt that the purpose of the statute in
providing for the reimbursement of the county and the ap-
propriation for that purpose was intended to put the loss
of the county tax because of the exemptions allowed upon
the state instead of the county; but we conceive it to be at
least doubtful whether that purpose is to be regarded as
''benevolent'' within the meaning of Section 36 of Article
III of the Constitution. We are inclined to the opinion
that the word ''benevolent'' as so used in the Constitution
was not intended to cover or apply to the appropriation of
money out of the state treasury in aid of a political sub-
division such as a county. But whatever may be the correct
view as to that question, we are convinced that the said sec-
tion cannot be held to apply to a county for the reason that
every county in this state, whether regarded as a corpora-
tion or as a mere political subdivision, is under the absolute
control of the state; and if the qualifying words of the sec-
tion ''not under the absolute control of the state'' were not
in the section, a county could not, in our opinion, be cor-
rectly regarded as a corporation within the meaning of
said section. It is said in Dillon on Municipal Corporations
(4th Ed., Vol. 1, § 23) :

''*Counties* are at most but local organizations which, for
the purpose of civil administration, are invested with a few
functions characteristic of a corporate existence. They

are local subdivisions of the state created by the sovereign power of the state, of its sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them.    *    *    *    A *county organization* is created almost exclusively with a view to the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice.  With scarcely an exception, all the powers and functions of the county organization have ʔ direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy.''

And again, in Section 25 of the same work, it is said, with reference to counties:  ''They are involuntary political or civil divisions of the state, created by general laws to aid in the administration of government.  Their powers are not uniform in all the states, but these generally relate to the administration of justice, the support of the poor, the establishment and repair of highways,—all of which are matters of *state,* as distinguished from municipal concern. They are purely auxiliaries of the state; and to the general statutes of the state they owe their creation, and the statutes confer upon them all the powers they possess, prescribe all the duties they owe, and impose all liabilities to which they are subject.''

In Cayuga County v. The State, 153 N. Y. 279, it is well said:

''Counties possess *quasi* corporate powers, but they are mere trustees of the public rights and powers conferred upon them as the agents of the state.  Their corporate capacity is superimposed upon them by the sovereign power.  They are auxiliary to the government of the state, and discharge the functions imposed upon them in matters of taxation and local government as representatives of the central and supreme authority.''

Speaking of a county's claim involved in that case, which was for the expenses of certain criminal trials, for which a statute had been enacted to reimburse the county, the court said further: "It was as a representative of a part of the general public that it urged its claim, and the money, when recovered, will go into its treasury and be applied to public uses." And the court held that the county, although a public corporation, was not a corporation within the meaning of the section of the New York Constitution prohibiting the giving or loaning of the money of the state "in aid of any association, corporation, or private undertaking," the court explaining that the word "corporation" there used plainly refers to private and business corporations, and does not include governmental agencies such as counties or towns.

The court said further in that case:

"That the claim made by the county of Cayuga for reimbursement was a public, as distinguished from a private, claim, does not, we think, admit of question. There was, in a proper sense, but one party to the transaction, and that was the state; and the act of 1885 was merely the reapportionment by the state of the burden of taxation in accordance with its sentiment of justice. The county is called a claimant, and its demand for reimbursement the presentation of a claim against the state. In truth, the transaction vas an appeal by one political division of the state to the sovereign power for justice in the administration of the common interests." (See also State ex rel v. Gordon, 261 Mo. 631; State ex rel v. Moore, 40 Nebr. 854, 25 L. R. A. 774; State ex rel v. Preus, 147 Minn. 125, 179 N. W. 725; Board of Sup'rs. v. Bidd, 129 Va. 638, 106 S. E. 684; Sacramento County v. Chambers (Cal. Dist. Ct. App.) 164 Pac. 613; Reclamation Board v. Chambers, (Cal.) 189 Pac. 479; Flood Abatement Commission v. Merritt, 158 N. Y. S. 289.)

In the Virginia case above cited, certain acts authorizing a bond issue by counties for improvement of state highways and for reimbursement of the county by the state of the

amount expended thereunder were held not to violate a constitutional provision prohibiting the state from contracting debts for other than specified purposes, and from assuming indebtedness of any county. In Sacramento County v. Chambers, supra, a statute was under consideration providing for state aid to cities and counties for the support and cure of persons afflicted with tuberculosis, and it was held not to violate a provision of the Constitution prohibiting the appropriation of state money for the use or benefit of any corporation, association, asylum, hospital or other institution "not under the exclusive management or control of the state as a state institution," nor violative of another constitutional provision prohibiting the loaning of the credit of the state for the payment of the liabilities of any "individual, association, municipal or other corporation." The court said that the state, instead of erecting and maintaining hospitals in various parts of the state to carry out the purpose of the statute, "which it would have a right to do, has employed the counties, its agents in the administration of certain of its functions of government, as instrumentalities for or aids in controlling and managing that branch of its governmental duties and policy."

In the Minnesota case of State ex rel v. Preus, supra, the court had under consideration a statute known as the "Mothers' Pension Law" which seems to have provided for the state's assuming a portion of the expenditures authorized by the act and imposed upon the several counties of the state. While the act was held invalid for the reason that it did not contain an appropriation of funds for discharging the liability of the state, it is indicated by the opinion of the court that otherwise the statute was thought to be valid. The court said: "In the enactment of the statute, the legislature intended to divide the pecuniary obligations there provided for between the county, acting under the statute, and the state, imposing upon the county two-thirds and upon the state one-third of the total payments made. The legislature could have imposed the entire

burden on the county but did not do so. While the purpose
of the state in thus assuming a share of the burden is clear
and without dispute, it is equally clear that the legislation
is incomplete in not rounding out the plan by making pro-
vision for the payment of the share due from the state.''

In State ex rel v. Gordon, supra, the court declared that
the constitutional prohibition of a grant of public money
to any individual, association of individuals, municipal or
other corporation, had no reference to corporations *belong-
ing* wholly to the state, organized wholly for governmental
purposes under public laws and governed by officers duly
elected or appointed according thereto; and as examples
the court mentioned ''the various eleemosynary institu-
tions of the state, the University, normal schools, public
schools, drainage and road districts, etc.''

It is clear that in the absence of constitutional restric-
tions, money may be appropriated by the legislature when-
ever the public welfare requires and will be promoted by
it, and it is for the legislature to decide what is for the
public good. The principle is well settled that the legisla-
ture can recognize claims ''founded in equity and justice
in the largest sense of those terms.'' In City of Richmond
v. Pace, 127 Va. 274, 103 S. E. 647, discussing the general
authority of the legislature in such matters, the court said:

''A state government is an independent existence repre-
senting the sovereignty of the people. The power of the
legislature is the power of that sovereignty, and as a gen-
eral proposition is supreme in all respects and unlimited in
all matters pertaining to legitimate legislation.  *  *  *
The fact that a claim against a municipal or public cor-
poration is not such a one as the law recognizes as a legal
obligation has often been decided by courts of the highest
respectability and learning to form no constitutional ob-
jection to the validity of a law imposing a tax and direct-
ing its payment.''

Having held above that this statute is not a law giving
money or granting property to the individuals benefited.

by the exemption provisions of the statute, it is unnecessary to again consider that question for the purpose of disposing of the argument that the money appropriated by the state is in effect a gift or donation. Indeed, it is not contended by the attorney general in this case that the statute provides for a gift or donation to the exemption beneficiary, but that the gift or donation is to the county. But it is argued in the brief that the fact that the donation is to the county instead of the beneficiary does not change the character of the "beneficence" but changes only the character of the recipient; and that the ultimate beneficiary is the exemption claimant. We think it is a sufficient answer to this contention to say, as we have said above, that the statute must fall or be sustained as a tax exemption statute. And being lawful as such a statute, the fact that in order to reduce or cover losses to the respective counties in the state as a result of the declared exemption, an appropriation is made out of the state treasury for that purpose, does not require that the statute or that part of it shall be held invalid solely on the ground that the legislature may have attempted to do indirectly what it could not do directly. Nor, in our opinion, is it permissible for the court to declare the exemption provisions of the statute, otherwise a valid exercise of legislative power, to be void because of the fact that by the same or some other statute the legislature has provided for the reimbursement of the county and appropriated money for that purpose. Indeed, we do not think the statute makes a gift to the exemption claimant even indirectly. The state may be regarded as the sole actor. It exempts the property declared to be exempt and stands the loss not only of the state tax which would otherwise be collected, but the county tax as well. The money appropriated is public money whether in the state or county treasury, and by the statute is taken out of one public pocket or fund and put into another.

No contention is made in the brief of the attorney general with reference to Section 7 of Article XVI of the Constitution providing that no money shall be paid out of the state treasury "except * * * on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state * * * shall be audited, allowed or paid until a full itemized statement in writing, verified by affidavit, shall be filed with the officer or officers whose duty it may be to audit the same." It might be thought from the language of said sixth paragraph of the statute that it was intended to require a reimbursement upon the mere filing with the state treasurer of a certified statement of exemptions allowed, without an audit or the issuance of a warrant, and the relator county seems to so have understood the statute, for the petition in the case does not show that the claim has been audited by the state auditor, or presented to that officer for such purpose, nor does it show the issuance of any warrant upon the treasurer by the auditor for the payment of any portion of the amount. The former attorney general representing the attorney general's office at the argument informed the court upon an inquiry directing attention to said section of the constitution that no contention against the validity of the Act was made under that section. Without deciding whether that section applies necessarily to the claim of a county for reimbursement under the statute in question, for the reason that if now decided in this case it would have to be upon the court's own motion, we are of the opinion that if the section is applicable, the fact that the statute in question does not provide expressly for the issuance of a warrant or for an audit of the claim would not render the statute invalid. It would still be open to the treasurer to protect his office and the state by requiring that any claim presented under the statute shall be audited and that a warrant shall first be issued by the proper state officer for the payment of any such claim. And the court in this case, upon any final order directing the payment of

the alleged claim or any part of it, can likewise provide for a compliance with the provisions of the Constitution in that respect.

The demurrer to the amended petition or application for the writ will be overruled, and as we think it may be necessary for an issue to be made up in the case for a determination of the amount of the county's claim properly payable out of the state treasury, suitable orders to carry out that procedure may be made upon suggestion of counsel.

BLUME and KIMBALL, JJ., concur.