STATE EX REL. KELSEY S. CHASE, AS COUNTY TREASUR-
ER OF RAMSEY COUNTY.v. J. A. O. PREUS, AS AUDITOR
OF THE STATE OF MINNESOTA, AND ANOTHER.[1]

October 29, 1920.

No. 22,027.

**Withdrawal of money from state treasury must be authorized by legislature.**

1. No money can be drawn from the state treasury on a state auditor's warrant, or otherwise, except as authorized by legislative appropriation Section 9 of article 9 of the Constitution, and section 67, G. S. 1913.

**What is not an appropriation act.**

2. A statute creating a liability on the part of the state is not in itself, standing alone, an appropriation act.

**Mothers Pension Law not an appropriation.**

3. Chapter 223, Laws 1917, under which the state assumes a portion of the expenditures therein authorized by and imposed upon the several counties of the state, and directing the state auditor to issue a warrant therefor and the state treasurer to pay the same, is not an appropriation act within the meaning of the Constitution.

Upon the relation of Kelsey S. Chase, as county treasurer of Ramsey county, the district court for that county granted its alternative writ of mandamus directed to J. A. O. Preus, as state auditor, and Henry Rines as state treasurer, to compel them respectively to issue and to pay to relator as county treasurer certain warrants on the state treasury. From the judgment entered pursuant to the order for judgment, Olin B. Lewis, J., respondents appealed. Reversed.

*Richard D. O'Brien,* County Attorney, and *Harry H. Peterson,* Assistant County Attorney, for relator.

*Clifford L. Hilton,* Attorney General, and *Egbert S. Oakley,* Assistant Attorney General, for respondents.

BROWN, C. J.

Proceedings in mandamus by relator as county treasurer of Ramsey

[1]Reported in 179 N. W. 725.

county to compel the state auditor to issue to him as such county treasurer a warrant on the state treasury in the sum of $64,146.32, and to compel respondent state treasurer to pay the same. Relator had judgment as prayed and respondents appealed.

The facts are not in dispute. It appears that in proceedings had under chapter 223, p. 337, Laws 1917, known as the "Mothers Pension Law," pursuant to orders of the court therein, a large number of warrants were duly issued by the county auditor of Ramsey county to dependent mothers during the years 1917, 1918 and 1919, which were duly paid by the county treasurer, the total amount thereof being $192,438.96. The statute under which the warrants were issued provides for a certification of the amounts so paid out to the state auditor and the state board of control, and that, if the board of control shall cause its approval thereof to be indorsed on the certificate filed with the state auditor, "the state auditor shall draw his warrant to the county treasurer for one-third of the amount so certified to have been paid out by the county, and the state treasurer shall pay the same."

The expenditures were properly certified to the state auditor and the board of control formally indorsed its approval thereon, all as provided for and required by the statute. But the auditor refused to issue a warrant for the amount claimed, on the ground that no appropriation has ever been made by the legislature to meet such claims, in consequence of which there is no fund in the state treasury against which to draw, therefore, that he is prohibited by law from issuing a warrant in payment of the claim.

The position of the auditor is sustained by section 9 of article 9 of the Constitution, and by section 67, G. S. 1913, directly prohibiting the issuance of warrants on the treasury of the state or the payment of money therefrom except in pursuance of an appropriation law. Counsel for relator do not contend to the contrary, but they do contend that the statute in question, the material provisions of which are as above quoted, is in itself an appropriation of such funds as may be necessary to meet all claims in favor of counties which may arise thereunder. We are unable to sustain that view of the statute.

In the enactment of the statute the legislature intended to divide the pecuniary obligations there provided for between the county acting under

the statute and the state, imposing upon the county two-thirds and upon the state one-third of the total payments made. The legislature could have imposed the entire burden on the county, but did not do so. While the purpose of the state in thus assuming a share of the burden is clear and without dispute, it is equally clear that the legislation is incomplete in not rounding out the plan by making provision for the payment of the share due from the state. The mere creation of the liability on the part of the state, or promise of the state to pay, if the statute may thus be construed, is of no force in the absence of an appropriation of funds from which the liability may be discharged. There has been no express appropriation, and in our view of the question none can be implied from the creation of the liability, though coupled with the express direction that it be paid in the manner pointed out by the statute.

In the year 1913 there was a complete remolding of the system for the conduct of the financial affairs of the state; all standing appropriations were abolished, and express biennial appropriations required in amounts necessary to meet all financial obligations of the state. This is known as the "budget system." Under it a sum of money sufficient to cover all obligations of the state for the biennial period is expressly appropriated, and the sum total thereof divided and distributed to the various state departments and purposes, so that the amount appropriated is thereby wholly absorbed; nothing remains in the revenue fund which may lawfully be resorted to for any purpose, however meritorious a particular demand may be. It is probable, under the former system of appropriations, that a statute like the one under consideration could be construed and held to be a standing appropriation of funds necessary to discharge the obligations of the state thereunder, but no such view can be taken at this time without overturning what seems the wise legislative policy inaugurated in 1913. It is quite clear that the legislature did not intend the statute as an appropriation act; it should not be implied as such by the court. Croasman v. Kincaid, 31 Ore. 445, 49 Pac. 764; Ingram v. Colgan, 106 Cal. 113, 38 Pac. 315, 39 Pac. 437, 28 L.R.A. 187, 46 Am. St. 221. Decisions from other states operating under different and perhaps more liberal systems are not helpful and cannot be followed.

It is a case of omission by those in charge of the particular legislation

in failing to call the matter to the proper legislative committee having in charge appropriations for like purposes. The omission may readily be remedied, for it is within the power of the legislature to grant reimbursement to the counties heretofore acting under the statute.

Judgment reversed.