**UNITED STATES FIRE INSURANCE COMPANY, et al., Appellants,**

**Marquette National Bank of Minneapolis, et al., Appellants,**

**Mid America State Bank of Highland Park, et al., Appellants,**

v.

**MINNESOTA STATE ZOOLOGICAL BOARD, et al., Respondents.**

No. 51819.

Supreme Court of Minnesota.

July 2, 1981.

---

White & Case, Laura B. Hoguet and Richard G. Greco, New York City, for United States Fire Ins. Co., et al.

Levitt, Palmer, Bowen, Rotman & Share, J. Patrick McDavitt and Matthew L. Levitt, Minneapolis, for United States Fire Ins. Co., et al., and Marquette Nat. Bank of Minneapolis, et al.

Winthrop, Weinstine & Sexton and Thomas J. Sexton, St. Paul, for Mid America State Bank of Highland Park, et al.

Warren Spannaus, Atty. Gen., and Richard S. Slowes, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Elmer B. Trousdale and Edward M. Laine, St. Paul, on behalf of Smith Barney, Harris Upham and Co., Inc., amicus curiae.

## OPINION

TODD, Justice.

The Minnesota Legislature created a State Zoological Board to administer a new

zoo. Originally, the Zoo Board was given a standing appropriation. In 1977, the funding was changed to require biennial appropriations. Also, in 1977, the legislature authorized the Zoo Board to acquire a ride facility to enhance the public's ability to view the zoo but provided no appropriation to fund the acquisition. The Zoo Board proceeded to purchase a Zoo Ride, and certificates of participation to provide the funding were sold to the appellants and others. The Zoo Board failed to make the payments required, and the appellants elected to declare the entire balance due and sought judgment against the State of Minnesota.[1] The trial court held that since there had been no appropriation by the legislature to fund the acquisition of the Zoo Ride, the State could not be subject to the claim of the appellants. The trial court also held that the State was not in default under the agreement. We affirm the trial court's decision that the State of Minnesota is not required to pay money under the contract, but reverse the trial court's holding that the State was not in default.

The defendant Zoo Board is an agency of the State of Minnesota established by Minn. Stat. §§ 85A.01–.05 (1980) (the "Zoo Act") to develop and maintain the Minnesota Zoological Garden in Dakota County, Minnesota, and to provide such lands, buildings, and equipment as the Board deems necessary for the parking, transportation, entertainment, education, or instruction of the public with regard to the Garden. By a 1977 amendment to the Zoo Act, the Zoo Board was authorized to:

> acquire by lease-purchase or installment purchase contract, transportation systems, facilities and equipment that it determines will substantially enhance the public's opportunity to view, study or derive information concerning the animals to be located in the zoological garden, and will increase attendance at the garden.

Act of June 9, 1977, ch. 455, § 78, 1977 Minn.Laws 1398, 1441. This 1977 amendment further stated that "The contracts may provide for: (1) the payment of moneys over a twelve year period * * *; (2) the payment of money from any funds of the [Zoo] board not pledged or appropriated for another purpose * * *." *Id.*

The 1977 legislature also altered the method by which money was to be appropriated to the Zoo Board. This legislation provided as follows:

85A.04 **ZOOLOGICAL GARDEN ACCOUNTS IN THE GENERAL FUND.** Subdivision 1. **MINNESOTA ZOOLOGICAL GARDEN GENERAL ACCOUNT.** A Minnesota zoological garden account is created in the general fund. All receipts from the operation of the Minnesota zoological garden shall be deposited to the credit of such account ~~and are hereby appropriated annually to the state zoological board to carry out the terms and provisions of this chapter.~~ Money in this account may be expended *as appropriated biennially* for operation, capital improvements, and equipment of the Minnesota zoological garden, including lease rentals and for acquisition of wild and domestic animals therefor and for payment of the principal of and interest on Minnesota state zoological garden bonds.

Act of June 9, 1977, ch. 455, § 79, 1977 Minn.Laws 1398, 1441–42.

Pursuant to this statutory authority, the Zoo Board entered into two contracts dated August 19, 1977, with a nonprofit corporation called Zoo Ride, Inc. The first contract was a concession agreement pursuant to which Zoo Ride, Inc., agreed to build the Zoo Ride. The second contract was an installment purchase agreement, whereby the Zoo Board agreed to purchase the Zoo Ride from Zoo Ride, Inc., for a price of $8,412,640, and to pay for it in quarterly installments over a 16-year period with interest. The quarterly installments were to commence on January 1, 1978, and end on July 1, 1994. Interest alone was payable through January 1, 1980, and the first principal payment was to be made on April 1, 1980.

---

1. Since the Zoo Board is a state agency, we will treat the State and the Board as one party.

*See Dunn v. Schmid,* 239 Minn. 559, 561, 60 N.W.2d 14, 16 (1953).

The installment agreement specifically provided in part:

5.01. The Board shall pay the Purchase Price for the System in Installment Payments, each comprising a portion of the Purchase Price and interest as specified in the attached Exhibit B, due at the times and in the amounts set forth in Exhibit B.

The installment agreement also provided that:

5.03. The Board covenants and agrees that it will include such Installment Payments in its annual or biennial budget to be submitted to the legislature, as the case may be, and will seek approval of its budget and appropriations sufficient to pay such Installment Payments. Moneys appropriated by the legislature for the payment of such Installment Payments, as indicated in the Board's legislatively approved budget, are pledged and allocated by the Board solely to make such payments.

By an assignment agreement and a fiscal agent agreement dated September 1, 1977, Zoo Ride, Inc., assigned its rights under the installment purchase agreement to an underwriter, Smith Barney, Harris Upham & Co., which in turn sold and assigned those rights, evidenced by "certificates of participation", to various investors. The plaintiffs in this action are all but one of the purchasers of these "certificates of participation" and, together, their holdings represent $4,612,640 of the $8,412,640 principal amount of the certificates.

The installment agreement contained a default provision which provided, in part, as follows:

Section 18. *Default.* If the Board either fails to pay any Installment Payment or any other amount herein provided when due and payable, or if the Board fails to perform promptly any of the other obligations or covenants herein, and such default continues for a period of thirty (30) days after the Corporation has given the Board written notice thereof, or if the Board declares bankruptcy under any applicable federal or state law, then in any such event, the Corporation may pursue any one or more of the following remedies (which shall be cumulative and exercisable concurrently or separately) as the Corporation in its sole discretion may determine * * *.

On default, Zoo Ride was given the following remedies: (1) to declare the unpaid balance immediately due and payable; (2) to take possession of the ride and sell it; (3) take possession of the ride and operate it pursuant to a separate "Concession Agreement."

In 1979, as part of an appropriations bill for the Zoo Board, the legislature enacted the following language: "[a]ll receipts from the operation of the zoo ride shall be deposited in a special account in the state treasury. All receipts from the zoo ride are appropriated and available until June 30, 1981 for the purposes of the zoo ride. These receipts are the only money appropriated for zoo ride operating expenses or debt service." Act of June 5, 1979, ch. 333, § 27, 1979 Minn.Laws 988, 1005. This same act repealed two subdivisions in the Zoo Act that dealt with anticipated excess operating receipts over operating expenses. *Id.,* § 108, 1979 Minn.Laws at 1044 (repealing Minn.Stat. § 85A.04, subd. 1a, subd. 1b (1978)).

On April 1, 1980, the Zoo Board failed to make the installment payment then due. Although the Board has made a partial payment since that time, it has not complied with the full terms of the installment payment schedule.

On April 24, 1980, the legislature enacted the following section of an appropriations bill, which, because of its extraordinary language, is included here in full:

The appropriation made in Laws 1979, Chapter 333, Section 27, shall stand.

During consideration of the zoological garden's transportation system legislation, the legislature was consistently and unequivocally assured that the only post enactment responsibility of the legislature would be to appropriate the receipts of the transportation system for the pur-

pose of effecting the installment payments of the system. Accordingly, authorization for the acquisition by installment purchase agreement of the transportation system at the Minnesota zoological garden pursuant to Minnesota Statutes, Section 85A.02, Subdivision 16 was made on the understanding that the system would produce revenues sufficient to meet all operating costs and installment payments. This authorization did not constitute a direct or indirect obligation of the state for the acquisition of the system beyond net revenues generated by the system.

This section is intended to make clear to all potential investors in state and local bonds and to financial institutions that the state is not and never has been responsible otherwise for the financing of the zoo ride. The legislature's action regarding appropriations for installment purchase payments for the zoo ride is intended to have no effect on the security of bonds for which the state's full faith credit, and taxing power are pledged, or bonds of the Minnesota housing finance agency secured in the manner provided by Minnesota Statutes, Section 462A.22, Subdivision 8. This section is further intended to forestall any attempt by any person to cause damage to the credit rating of the state in order to force the state to assume an obligation for which it is neither legally nor morally responsible.

Act of Apr. 24, 1980, ch. 614, § 14, 1980 Minn.Laws 1436, 1442–43. Thereafter, this lawsuit was filed.

In their amended complaint, appellants alleged four causes of action against the Zoo Board and the State. The first and second causes of action sought a judgment of the court that the Zoo Board and the State were in default and obligated to pay $4,612,640 to appellants as their proportionate share of the purchase price. The third cause of action sought equitable relief based on unjust enrichment in the event the court concluded that the Zoo Board and the State were not legally obligated to appellants. The fourth cause of action alleged that the 1979 amendment, limiting pay-

ments for the Zoo Ride to revenues generated by the ride, and the 1980 legislation, reaffirming the 1979 legislation, prevented the Zoo Board from making the installment payments and was thus an unconstitutional impairment of their contract. On cross-motions for judgment on the pleadings, the trial court held that the State was not obligated under the installment agreement and that it was not in default.

The issues are:

1. Did the trial court err in determining that the legislature is powerless to create a contract to pay money unless it simultaneously appropriates funds to pay the contract price?

2. Did the trial court err in refusing to grant appellants' request for equitable relief?

3. Did the legislature unconstitutionally impair appellants' contract with the Zoo Board when it limited the payment of the installments to net revenues generated by the Zoo Ride?

1. Appellants make a number of separate arguments on this issue. First, appellants argue that the language of the installment contract itself contains an absolute promise to pay on the part of the Zoo Board. This argument is based on sections 5.01 and 5.03 of the installment contract, quoted earlier in this opinion. Since this promise to pay is absolute, appellants argue, a condition that an appropriation be made by the legislature cannot be read into the agreement. Appellants also argue that reading such a condition into the contract makes the default provisions contained in section 18 of the agreement meaningless because there never could be a default.

Respondent argues that the constitutional and statutory provisions relied upon by the trial court require a conclusion that the payment of installments was conditional on a legislative appropriation. This argument is based on respondents' contention that the state is powerless to enter a binding contract unless the legislature appropriates funds for payment. Therefore, in order to preserve the validity of the contract, re-

spondent argues, the district court was required to find that the promise to pay was conditioned upon an appropriation of funds by the legislature. Respondent also argues that because the debt created by the installment contract is not a public debt, it can be paid only through the appropriations process. Finally, respondents argue that the terms of the contract itself indicate that the promise to pay is contingent on legislative appropriations. This argument is based on section 5.03 of the contract which states that the Board "will seek approval of its budget and appropriations sufficient to pay such Installment Payments."

The result reached by the trial court on this issue was based on constitutional and statutory provisions that restrict the power of state officials to incur or pay a state debt. Minn.Const. art. 11, § 1, provides: "No money shall be paid out of the treasury of this state except in pursuance of an appropriation by law." Minn.Stat. § 10.17 (1980) provides that:

> When there has been an appropriation for any purpose it shall be unlawful for any state board or official to incur indebtedness on behalf of the board, the official, or the state in excess of the appropriation made for such purpose. It is hereby made unlawful for any state board or official to incur any indebtedness in behalf of the board, official, or the state of any nature until after an appropriation therefor has been made by the legislature. Any official violating these provisions shall be guilty of a misdemeanor and the governor is hereby authorized and empowered to remove any such official from office.

Minn.Stat. § 16A.15, subd. 3 (1980), provides, in part, that:

> No payment shall be made without prior obligation. No obligation shall be incurred against any fund, allotment, or appropriation unless the commissioner of finance shall first certify that there is a sufficient unencumbered balance in such fund, allotment, or appropriation to meet the same. Every expenditure or obligation authorized or incurred in violation of the provisions of this chapter shall be presumed invalid and shall be ineligible for payment until its validity is established as hereinafter provided. * * * If any appointive officer or employee of the state shall knowingly incur any obligation or shall authorize or make any expenditure in violation of the provisions of this chapter or take part therein, it shall be grounds for his removal by the officer appointing him, and, if the appointing officer be other than the governor and shall fail to remove such officer or employee, the governor may exercise such power of removal, after giving notice of the charges and opportunity for hearing thereon to the accused officer or employee and to the officer appointing him.

Minn.Stat. 16A.57 (1980) provides:

> Unless otherwise expressly provided by law, no money belonging to or for the uses of the state shall be expended or applied by any official, department, or agency of the state government or any institution under its control, except under authority of an appropriation by law and or allotment relating thereto as herein provided and upon warrant of the commissioner of finance.

The trial court relied on these provisions.

The trial court also relied on three cases construing the Minnesota constitutional and statutory provisions. The most significant case for the analysis here is *Butler v. Hatfield*, 277 Minn. 314, 152 N.W.2d 484 (1967). In *Butler*, at issue was the enforceability of a contract between the Commissioner of Administration and an architectural firm; the contract was expressly conditioned upon a legislative appropriation. Before the legislative appropriation was made, a new Commissioner of Administration was appointed, and the architectural firm was notified that the state was not bound by the contract. In resolving the issue of the contract's validity, the *Butler* court first noted that except as restricted by "its own or the Federal Constitution, a state has absolute and unqualified power to enter into contracts which advance its proprietary interests." *Id.* at 321, 152 N.W.2d at 491. The

court reviewed selected constitutional and statutory provisions, noting that such provisions limit the power of a state official to contractually bind the state. Then the *Butler* court stated: "[a] statute creating a liability on the part of the state is not an 'appropriation by law' within the meaning of [the constitution]." *Id.* at 323, 152 N.W.2d at 493. Based on these authorities and statements, the court stated: "[i]f the legislature had refused to make the anticipated appropriation, there would have been no contract." *Id.* at 325–26, 152 N.W.2d at 494 (footnote omitted). The court then stated that while the agreement was not invalid on its face, "it imposed no *financial obligation* on the state until an appropriation [was made]." *Id.* at 326, 152 N.W.2d at 494 (emphasis added).

The two other cases relied upon by the trial court are *County of Beltrami v. Marshall*, 271 Minn. 115, 135 N.W.2d 749 (1965) and *State ex rel. Chase v. Preus*, 147 Minn. 125, 179 N.W. 725 (1920). *County of Beltrami v. Marshall*, 271 Minn. 115, 135 N.W.2d 749 (1965), was a declaratory judgment action brought by the county against the state. The county was deducting court costs and fees from the prosecution of traffic and motor vehicle law violation cases involving arrests by the highway patrol before a share of the fine was passed on to the state. The state contended that the county was required to pay all costs and fees. The court agreed, reasoning that since there were no state funds appropriated for the purpose, the state could not be required to pay. *Id.* at 121–122, 135 N.W.2d at 754. *State ex rel. Chase v. Preus*, 147 Minn. 125, 179 N.W. 725 (1920), involved payments made by a county pursuant to the "Mothers' Pension Law" of 1917. The law authorized the state auditor to reimburse ⅓ of the amount paid by the county. The auditor, however, refused to make the payments because there had been no appropriation for the purpose. The court upheld the actions of the auditor, stating that because the legislation lacked an appropriation, it was "incomplete." 147 Minn. at 127, 179 N.W. at 726. Because the court felt it was clear that the legislature

did not intend the legislation as an appropriation act, the court refused to imply an appropriation. *Id.*, 179 N.W. at 726. The court stated that "[t]he mere creation of the liability on the part of the state, or the promise of the state to pay * * * is of no force in the absence of an appropriation of funds from which the liability may be discharged." *Id.*, 179 N.W. at 726.

■ From the strong language in these cases, it is evident that the trial court was correct in its conclusion that the state cannot be required to pay money from the general fund for the Zoo Ride unless and until the legislature appropriates funds for that purpose.

The appellants also argue that the legislature may incur a contractual liability enforceable by the courts in the absence of an appropriation, but that if a judgment is entered declaring the state liable, it may only be satisfied by legislative appropriation. The relief requested by appellants is that this court direct the entry of judgment against the Zoo Board for the amount due under the installment contract. Appellants acknowledge that such a judgment would be payable only if the legislature appropriated money for that purpose.

Respondents argue that the Minnesota constitutional and statutory provisions coupled with the *Butler, Marshall,* and *Preus* decisions compel the conclusion that no state obligation was incurred in the absence of an appropriation. Respondents argue that appellants base their argument on the interpretations given by federal and other state courts to their constitutions and that these interpretations are irrelevant. Additionally, respondents argue that the constitutional provisions governing the creation of a public debt indicate that if the installment purchase agreement were to be construed as an unconditional obligation of the state for which no money was appropriated, it would amount to the unconstitutional creation of a public debt.

Appellants' argument appears to be precluded by language in *Butler* and *Preus.* As discussed above, both cases indicated

that in the absence of an appropriation, a law which creates a liability on the part of the state is of no force. Appellants argue with some force, however, that the legislature, by specific statute, may authorize state officials to incur obligations they would otherwise be prevented by statute from incurring. While this line of reasoning is superficially persuasive, it is precluded by the holding in *Preus* that a statute which authorized a state official to pay money was of no force without an appropriation. 147 Minn. at 127, 179 N.W. at 726. The 1977 legislation authorizing the Zoo Board to enter into a contract for the purchase of the Zoo Ride is less absolute than the legislation rejected in *Preus*, since the Zoo Board was only authorized to agree to payment of funds "not pledged or appropriated for another purpose." Act of June 9, 1977, ch. 455, § 78, 1977 Minn.Laws 1398, 1441. Appellants' arguments relating to federal decisions and decisions of other states that appear to reach a different conclusion are not persuasive.

While we have adopted the trial court's resolution regarding the enforceability of the State's contractual obligation, we do not agree with its conclusion that the State is not in default. If the State has promised to pay only the amount appropriated by the legislature, then there never could be a default. Since the contract contains extensive default provisions, this construction would render a large portion of the contract meaningless and should be avoided. *See Independent School District No. 877 v. Loberg Plumbing & Heating Co.*, 266 Minn. 426, 123 N.W.2d 793 (1963). In addition, at oral argument the State conceded that appellants were entitled to the remedies provided under the contract in case of default, except the right to declare the entire balance due. This last objection relates to the State's concern involving creation of a public debt. We do not share this concern. If appellants elect to declare the entire balance due, they still have no basis to obtain a judgment against the State. This election, however, does have the practical advantage of finalizing the amount due so that the remaining remedies under the contract may be effectuated on a final basis, as opposed to a piecemeal remedy exercised each time an installment becomes past due. We hold that the State is in default, and the appellant creditors are entitled to the default remedies provided in the contract.

2. Having held the contract valid, we must now consider appellants' claim for equitable relief based on unjust enrichment. We deny this relief for two reasons. First, equitable relief cannot be granted where the rights of the parties are governed by a valid contract. *See Cady v. Bush*, 283 Minn. 105, 166 N.W.2d 358 (1969). Second, we agree with the trial court that if equitable relief were granted in this case, the constitutional and statutory restrictions on the State's ability to pay money from the general fund would be circumvented.

3. We reject the claims of unconstitutional impairment of contract given the construction we have placed on the applicable Minnesota constitutional and statutory provisions. The net effect of the contract is to limit the payments to whatever amount the legislature appropriates. It is fundamental to the impairment of contract analysis that there be some alteration in the contract terms. *See United States Trust Co. v. New Jersey*, 431 U.S. 1, 16, 97 S.Ct. 1505, 1514, 52 L.Ed.2d 92 (1977). Since the legislature could not be required to appropriate any money for the purpose of making the installment payments, the fact that less than enough funds were appropriated does not amount to an unconstitutional impairment of the contract. Furthermore, our holding has sustained all the nonpayment rights of appellants under the default provisions of the contract.

Affirmed in part; reversed in part; and remanded to the district court for further proceedings consistent with this opinion.