R. Kathleen MORRIS, et al.,
Appellants,

v.

The Honorable Rudy PERPICH, et al., Respondents.

No. C9–87–1557.

Court of Appeals of Minnesota.

March 22, 1988.

Review Denied May 16, 1988.

Edward C. Anderson, St. Louis Park, for appellants.

Hubert Humphrey, III, Atty. Gen., Peter M. Ackerberg, Sp. Asst. Atty. Gen., Pierre Regnier, Marie Darst, Jardine, Logan & O'Brien, St. Paul, for respondents.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and SCHULTZ *, JJ.

## OPINION

PARKER, Judge.

Appellants R. Kathleen Morris, Stephen Doyle and Doyle & Michales brought this action to recover $162,427.80 in attorney's fees and expenses incurred in the representation of Morris by Doyle and Doyle & Michales. Appellants claim the state, Governor Rudy Perpich, and Scott County are liable for attorney's fees associated with Morris' representation before the Gover-

nor's special commission to consider a petition for removal from her position as Scott County Attorney. Against Scott County, appellants claim the county agreed to pay the attorney's fees in the removal proceedings. Against the state respondents, they claim the state is required by Minnesota, constitutional and contract law to pay the fees.

The district court granted summary judgment to all respondents. It found that no material dispute existed on the facts underlying the claim against the Governor and the state. It found that factual disputes did exist between appellants and Scott County, but determined that on the facts most favorable to appellants, they were still not entitled to relief as a matter of law. We affirm.

## FACTS

This case arises out of the "Scott County sex abuse cases," in which R. Kathleen Morris, Scott County Attorney, investigated allegations of extensive sexual abuse of children in that county. After the unsuccessful prosecution of two defendants, Morris dismissed the charges against the remaining defendants in October 1984. Several defendants then initiated civil actions against Morris in federal court in 1984 and 1985. By December 1984, Morris had hired Doyle to represent her.

One of the dismissed defendants, Cindy Buchan, filed a petition with Governor Rudy Perpich, asking that Morris be removed from office and alleging generally that Morris, as Scott County attorney, was guilty of malfeasance or nonfeasance in investigating and prosecuting the alleged sexual abuse.

Pursuant to Minn.Stat. § 351.04 (1984), the Governor issued Executive Order No. 85–10 on March 25, 1985, which created a special commission "to take and report evidence at a hearing to determine whether there [was] a basis to remove Kathleen Morris as Scott County Attorney." Judge Lynn C. Olson of the tenth judicial district was appointed special commissioner. At-

* Acting as judge of the Court of Appeals by ap-

pointment pursuant to Minn. Const. art. 6, § 2.

torneys Julius Gernes and Irene Scott were named to assist the commissioner.

The Governor directed the Attorney General to appoint counsel "to organize and present evidence to the Commission." The Attorney General appointed Kelton Gage to this position.

The executive order also provided, "The Scott County Attorney shall be entitled to be represented at the hearing by an attorney of her own choice." It did not expressly provide that the state would pay for her representation.

Scott County, through its insurer, Home Insurance Company, provided attorney James Martin to represent Morris before the special commission. Doyle and Martin represented Morris in the proceedings which convened on June 13, 1985. After one day of testimony, the hearing was continued for six weeks.

In June 1985, depositions were held at the Scott County courthouse in connection with the removal proceedings. At that time, Scott County Administrator Joseph Ries met with Doyle. Doyle claims by way of affidavit that in the course of that meeting, Ries told him that the county would pay Morris' attorney's fees in the removal proceedings. Ries, also by affidavit, denied that he ever made such a statement.

On July 2, 1985, the Scott County Board of Commissioners adopted a resolution regarding the representation of county employees by independent legal counsel in the federal lawsuits and in the removal proceedings. That resolution permitted county employees who were not named parties in the federal lawsuits to employ independent legal counsel in the removal proceedings. Named parties were not explicitly granted the same treatment.

On July 26, 1985, Doyle submitted to the county his first statement for legal services, for the period from December 4, 1984, to July 17, 1985. Ries then notified Doyle that he could find no authority for recommending that the county pay the claim. Morris responded by letter on August 8, 1985, citing several reasons why she believed the county should pay Doyle's bill. No allegation was then made that Ries had promised Doyle such payment or that the county board's July 2 resolution mandated such payment.

On August 1, 1985, the removal hearings resumed; they were completed by August 19, 1985. Appellants argue that Gage presented evidence only in favor of the petition. Doyle and Martin, Morris' county-provided attorney, presented evidence against it. In October 1985 the special commission concluded that Morris had committed two acts of malfeasance, but nevertheless recommended that the Governor not remove her from office.

On October 22, 1985, the county board adopted a resolution terminating its policy addressed by the July 2 resolution. It also adopted the special commission's findings and report and resolved to deny appellants' claim for payment of legal services on the ground that such payment would not serve a public purpose and would be contrary to law. The Governor did not remove Morris from office.

Doyle did not submit a bill to the Governor for attorney's fees incurred in the removal proceedings until May 9, 1986, almost nine months after the proceedings had concluded. The Attorney General denied payment on behalf of the state.

Appellants then brought this action for attorney's fees, alleging that contract, constitutional and Minnesota law obligated respondents to pay the fees. Scott County brought a cross-motion for summary judgment, and the state and Governor filed a motion to dismiss. The trial court denied appellants' motion for summary judgment, granting judgment in favor of respondents.

### ISSUES

1. Did the trial court properly grant summary judgment for Scott County?

2. Did the trial court properly grant summary judgment for the state and the Governor?

### DISCUSSION

Generally, attorney's fees are not recoverable in litigation unless there is a specific

contract permitting, or a statute authorizing, such recovery. *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 53 (Minn. 1983). No statute is applicable which provides for the payment of attorney's fees incurred in removal proceedings.[1]

Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal from a summary judgment, the reviewing court must determine (1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its interpretation of the law. *Huver v. Opatz*, 392 N.W.2d 237, 239 (Minn.1986). A fact is not material if it will not affect the outcome of the case. *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 229, 219 N.W.2d 641, 646 (1974).

## I

Against Scott County, appellants claim that either contract law or the board's July 2 resolution entitles them to attorney's fees.

### County Administrator's Alleged Promise

The parties agree that a factual dispute exists on whether the county board was bound to pay the attorney's fees. Doyle's affidavit states that county administrator Ries told him the county board would pay Morris' attorney's fees for the removal proceedings. Ries' affidavit controverts Doyle's affidavit in virtually every material respect.

Despite the factual dispute, the trial court held that appellants were not entitled to the fees as a matter of law. The court stated that even if Ries had made the statements that Doyle attributed to him, "Ries was without authority to make them and therefore they are not binding on the county." We agree.

■ Absent a resolution authorizing the county administrator to guarantee payment of attorney's fees, the administrator had no authority to bind the county. *See Alexander Co. v. City of Owatonna*, 222 Minn. 312, 320–21, 24 N.W.2d 244, 249–50 (1946) (despite reliance by builder, act of city engineer in granting construction permit was void because city council did not delegate such authority to city engineer). Minn. Stat. § 373.02 (1984) provides in relevant part:

The powers of the county as a body politic and corporate *shall only be exercised by the county board or in pursuance of a resolution* adopted by the county board.

(Emphasis added). The alleged agreement was not made by the county board, but by the county administrator. Doyle presented no evidence that the board authorized Ries to pay Morris' attorney's fees as of June 1985 when the alleged agreement was made.

The trial court also correctly noted that Doyle presented no evidence that the board later ratified the agreement. Ratification is not possible without some official action on the part of the board taken with reference to the subject of the ratification. *True v. Board of County Commissioners*, 83 Minn. 293, 295, 86 N.W. 102, 103 (1901). The board passed no resolution indicating that its purpose was to ratify Ries' agreement.

■ Though Doyle may have believed that Ries had the requisite authority to enter into the agreement on behalf of the county, apparent authority is insufficient. "All persons contracting with municipal corporations are conclusively presumed to know the extent of the authority possessed by the officers with whom they are dealing." *Jewell Belting Co. v. Village of Bertha*, 91 Minn. 9, 12, 97 N.W. 424, 425 (1903). Doyle was required to ascertain whether the board had passed a resolution authorizing the payment of attorney's fees, or act at his peril.

---

1. Since the removal proceedings in this case, the legislature has amended Minn.Stat. Ch. 351 to permit elected county officials facing removal proceedings to be "represented by legal counsel *at their own expense.*" Minn.Stat. § 351.19, subd. 4 (1986) (emphasis added). "[T]he county *may* assume the legal costs incurred by the elected county official." *Id.* (emphasis added).

With respect to Doyle's argument that he relied on Ries' statement, the trial court aptly stated:

[T]he record is clear that Morris retained Doyle well before the June 1985 conversation between Ries and Doyle. According to Doyle's statement for services rendered * * * Doyle started working for Morris as early as December [4], 1984, six months before the alleged conversation.

### July 2, 1985, Resolution

The interpretation of a resolution is a question of law and may be appropriately resolved on a motion for summary judgment. *See Hursh v. Village of Long Lake*, 247 Minn. 1, 5, 75 N.W.2d 602, 605 (1956).

■ On July 2, 1985, the county board passed the following resolution, which provides in pertinent part:

WHEREAS, the County Attorney is a named party in all of said lawsuits, and is therefore unable to provide legal advice to other county officers and employees over and above that provided by the county's insuring agreements, and;

WHEREAS, a Governor's Commission is presently investigating the possibility of removing the County Attorney, again disabling the County Attorney from giving independent legal advice to other county officers and employees, and;

WHEREAS, certain county officers and employees have been or will be asked to give statements, depositions or testimony with respect to said lawsuits and removal proceedings;

NOW, therefore, in discharge of its statutory duties, the County Board of Scott County hereby adopts the following policy and procedures regarding the employment of independent legal counsel for county officers and employees:

1. Any county officer or employee who is a named party in the Minnesota Federal District Court Lawsuits arising from the "Scott County Sex Abuse" cases may employ independent legal counsel for the purpose of defending them against potential monetary damages in excess of applicable insurance limits.

2. Any county officer or employee who is not a named party in the Federal lawsuits, but who is called upon to give statements, depositions or testimony in either the Federal lawsuits or Removal proceedings may obtain independent legal counsel for the purpose of advising them with respect to the giving of said statements, depositions or testimony.

3. Upon written notification and confirmation by independent legal counsel given to the County Administrator, the county will pay reasonable attorney's fees and expenses incurred pursuant to the foregoing provisions at an hourly rate not to exceed $75.00 per hour. Billing of reasonable fees and expenses incurred shall be itemized and submitted monthly to the County Administrator and payment shall be subject to approval by the County Board. No payment shall be made without compliance with the above referenced notice.

The trial court held that the resolution was

confined to reimbursing employees and officers [who were named parties] in connection with the suits in federal court. To extend it to cover the removal proceedings before the Olson Commission would be to do terminal violence to the language of that resolution.

Appellants claim, however, that this resolution authorized payment of the fees incurred in the removal proceedings.

There is no way to read the resolution to say that the board agreed to pay Morris' attorney's fees in the removal proceedings. Because Morris was a named party in the federal lawsuits, coverage of her attorney's fees is governed by paragraph 1 of the resolution. That paragraph covers only the employment of independent legal counsel to defend against potential *monetary damages* in *federal* lawsuits arising from the "Scott County Sex Abuse" cases. Removal proceedings are specifically excluded, involving neither federal lawsuits nor monetary damages.

Paragraph 2 provides independent legal counsel to persons who are *not parties* in the federal litigation with respect to *both* that litigation and the removal proceedings. As a named party, Morris does not fall within the applicability of paragraph 2. Additionally, by including both the federal proceedings and the removal proceedings within the scope of paragraph 2, but excluding the latter from paragraph 1, the board expressed its intention to accord different treatment to named parties and to distinguish between the two types of proceedings.

The resolution did not authorize Morris to employ counsel of her choice at the county's expense. Through its insurer, the board nevertheless provided her with representation, a well-known and experienced attorney, James Martin.

Finally, Morris can claim no reliance on the board's July 2 resolution. Her letter of August 8, 1985, indicates that she believed that the purpose of the board's resolution was to authorize payment of independent counsel fees for *"every other person* in Scott County who desire[d] a lawyer to represent [him or her] with respect to the hearings."* (Emphasis added).

## II

Against the state and Governor, appellants claim that Minnesota, constitutional and contract law obligate them to pay the attorney's fees.

### Minnesota Law

■ Appellants argue that under Minn. Stat. §§ 351.03, 351.04 (1984) and *Bush v. Perpich,* 370 N.W.2d 886 (Minn.1985), the state was required to provide state-paid counsel. The trial court held, however:

The state as party Plaintiff brings numerous actions, both civil and criminal, and there is no general rule that when the State loses, it must pay attorney's fees.

We agree with this analysis. Section 351.-03 (1984) provides:

The governor may remove from office any * * * county attorney * * * when it appears to him by competent evidence, that the officer has been guilty of malfeasance or nonfeasance in the performance of his official duties. Prior to removal, he shall give to the officer a copy of the charges against him and an opportunity to be heard in his defense.

Section 351.04, which the *Bush* decision interpreted, provides in relevant part:

When charges are made against any such officer, the governor shall appoint a special commissioner to take and report the testimony for and against him to be used on the hearing.

In *Bush* the supreme court determined that the role of counsel assisting the commissioner was to provide a

neutral presentation of all evidence *for and against* the official, not merely the disclosure of evidence found to support the petition for removal. Counsel's role, is, in that manner, distinguishable from that of a prosecuting attorney.

370 N.W.2d at 888 (emphasis in original).

Appellants claim that Gage failed to carry out his duty to make a neutral presentation against the petition for removal, because he presented only evidence in support of it. They therefore contend it was necessary for the state to pit counsel appointed by the Attorney General (Gage) against Morris' counsel (Doyle) and to pay for both counsels' fees.

*Bush* itself does not require any matching of counsel. Gage's role was to present both sides of the issue. That obligation was clearly established by the time the hearings resumed in August 1985, the supreme court having decided *Bush* in July. If Gage failed to carry out his duty, Morris' remedy was to seek a new removal hearing. There is no evidence, however, that appellants ever brought the issue to the commissioner's attention.

### Constitutional Claim

■ Morris also cannot complain that the alleged deficiency in the proceedings denied her due process under the Constitution. Martin represented her throughout the removal proceedings, presenting evidence on her behalf. It was Morris' wish

to be represented by someone with whose skills she was more familiar.

Morris raises the constitutional due process argument for the first time on appeal.

> Where an issue of constitutionality is not raised and acted upon in the court below, a party will not be heard to raise the issue for the first time on appeal * * *.

*Hampton v. Hampton,* 303 Minn. 500, 501, 229 N.W.2d 139, 140 (1975).

### Contract Claims

Appellants claim that various theories of contract law entitle them to relief. The trial court rejected all of appellants' contract claims: express, implied in fact and implied in law.

■ While the state may enter into contracts and some traditional concepts of contract law apply to such contracts, a state official's power to bind the state contractually is limited by statutory and constitutional provisions. *See United States Fire Insurance Co. v. Minnesota State Zoological Board,* 307 N.W.2d 490, 496–97 (Minn. 1981). In the absence of an appropriation, a law or contract which creates a liability on the part of the state is of no force. *See id.* Payment of a state debt absent an appropriation would violate Minn. Const. art. XI, § 1, and would constitute a misdemeanor under Minn.Stat. § 10.17 (1984).

■ Valid contracts with the state must also comply with certain statutory formalities. They must be in writing and contain the elements of offer, acceptance and consideration. Minn.Stat. § 16B.01, subd. 4 (1984). Additionally, the state is not bound by a contract unless it has been properly executed, approved in writing, and the full amount of contract liability has been appropriated. Minn.Stat. § 16B.06, subd. 2 (1984).

■ Appellants claim that an "agreement whereby the state would pay the fees for Morris' counsel" was created because (1) under *Bush,* the Governor was required to provide counsel to present evidence both for and against the petition to remove Morris; (2) the Governor anticipated an adversarial proceeding; (3) the Governor's executive order creating the commission entitled her to be represented by an attorney of her choice; and (4) Doyle accepted the "assignment" of the Governor's order.

These four points together do not satisfy the statutory or constitutional prerequisites for a valid state contract. There is no evidence that a written instrument exists containing the elements of offer, acceptance and consideration as required by Minn.Stat. § 16B.01, subd. 4 (1984). The only manifestation of an agreement to pay Morris' attorney's fees cited by appellants is the Governor's executive order. However, nothing in that order provides for the payment of such fees; it only permits her to have counsel represent her in the proceedings.

We find it difficult to countenance Doyle's claim that he intended to contract with the state. He was retained by Morris three months before the Governor's order. His affidavit indicates that he expected to be paid by the county; it does not mention the state. He failed to bill the state until May 1985, several months after the proceedings had concluded and the county had denied him reimbursement.

Appellants have also produced no evidence that the legislature has appropriated the full amount of contract liability. *See* Minn.Stat. § 16B.06, subd. 2. The legislature could ratify this purported contract, *see Butler v. Hatfield,* 277 Minn. 314, 325, 152 N.W.2d 484, 493 (1967). However, absent ratification and an appropriation, the alleged contract is void, *see Minnesota State Zoological Board,* 307 N.W.2d at 496, and payment of the attorney's fees would violate the Minnesota Constitution as well as Minn.Stat. § 10.17 (1984).

Finally, we reject appellants' claim for equitable relief. That claim is governed by *Minnesota State Zoological Board,* in which the supreme court stated:

> [I]f equitable relief were granted in this case, the constitutional and statutory restrictions on the State's ability to pay money from the general fund would be circumvented.

*Id.,* 307 N.W.2d at 497.

### DECISION

Scott County was not bound to pay Morris' attorneys fees, because (1) the county

administrator had no authority to bind the county, and (2) the July 2, 1985, resolution did not authorize such payment. The state is not bound to pay the attorney's fees, because the state cannot be required to pay a debt absent an appropriation and without complying with statutory and constitutional prerequisites.

Affirmed.